Earl Smith v. Commissioner. Earl Smith and Mary Smith v. Commissioner.
Smith v. Commissioner
Docket Nos. 44846, 44849.
United States Tax Court
T.C. Memo 1955-38; 1955 Tax Ct. Memo LEXIS 301; 14 T.C.M. (CCH) 129; T.C.M. (RIA) 55038; February 14, 1955
William L. Parker, Esq., 1019 Bank of Commerce Building, Norfolk, Va., for the petitioners. Robert E. Johnson, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion Withey, Judge: The respondent has determined deficiencies in the income tax of the petitioners and additions to tax under sections 293(b), 291 and 294(d)(1)(A) of the Internal Revenue Code of 1939 as follows for the indicated years: Additions to Tax
Docket
Sec.
Sec.
Sec. 294
No.
Year
Deficiency
293(b)
291
(d)(1)(A)
Earl Smith
44846
1945
$1,593.91
$796.96
$159.39
Earl Smith
44846
1946
335.00
167.50
33.50
Earl Smith
44846
1947
410.00
205.00
41.00
Earl Smith
44846
1948
452.00
226.00
$45.20
45.20
Earl Smith and Mary Smith
44849
1949
154.00
77.00
15.40
Earl Smith and Mary Smith
44849
1950
936.42
468.21
46.82
93.64
*302 The issues presented are the correctness of the respondent's action in determining that (1) the income reported by the petitioners for the years 1945 through 1950 was understated, (2) the petitioners were liable for additions to tax for fraud for the years 1945 through 1950 under section 293(b) of the 1939 Code, (3) the petitioners were liable for additions to tax for failure to file a return within the prescribed time for the years 1948 and 1950, and (4) the petitioners were liable for additions to tax for failure to file declarations of estimated tax for the years 1945 through 1950. Findings of Fact The petitioners are husband and wife, residing in Princess Anne, Virginia. Earl Smith, sometimes hereinafter referred to as the petitioner or Earl, filed his income tax returns for the calendar years 1945, 1946, 1947 and 1948 with the collector of internal revenue at Richmond, Virginia. Earl's return for 1948 was filed on April 25, 1949. Earl and Mary filed their joint Federal income tax returns for the calendar years 1949 and 1950 with the collector of internal revenue at Richmond, Virginia. The petitioners' return for 1950 was filed on March 23, 1951. Earl was born in 1916 and *303 was adopted while very young. He was not sent to school and, with the exception of being able to sign his name, he cannot read, write or count. At an early age he began to work and has been working all of his life. His first job was on a truck farm for $1 per day. He has also worked in the "log woods" earning 75 cents per day. In addition he from time to time caddied at Lynnhaven Golf Course in Princess Anne, receiving 65 cents or 75 cents for nine holes of golf. He also hunted golf balls which he sold, earning $6 or $7 per day. During two or three summers he worked at the Cavalier Hotel at Virginia Beach for $2 per day. Mary was born in 1915. Her education consisted of attending elementary school for five grades. During most of her life she had been employed on a truck farm and also has worked as a maid and cook. The petitioners have known each other for over 25 years. In 1941 they began living together and were married in 1949. They do not have any children. Earl owned a small restaurant during the taxable years, known as the "Cook Shop," or the "Landtown Inn," which was operated by Mary. The restaurant was in an outlying rural area and occupied the front room of the building *304 where the petitioners lived. The building was a one-story structure, consisting of two rooms, one room being occupied by the restaurant, which contained a counter and four booths, and the other room was the petitioners' bedroom which also contained a cook stove. The bedroom was heated by a kerosene stove. In 1950 the petitioner operated a farm on property which he did not own. For the years 1945 to 1948, inclusive, Earl filed individual income tax returns which reported adjusted gross income or (loss) and tax liabilities as follows: Adjusted
Tax
gross income
liability
Year
reported
reported
1945
$257.50
None
1946
(563.36)
None
1947
(362.56)
None
1948
(156.19)
None
Mary did not file a Federal income tax return until 1949. For the years 1949 and 1950, Earl and Mary filed joint returns which reported adjusted gross income or (loss) and tax liabilities as follows: Adjusted
Tax
gross income
liability
Year
reported
reported
1949
$273.97
None
1950
(919.50)
None
The petitioners on December 31 of each of the years indicated owned assets acquired with their own funds as follows: 1944
1945
1946
1947
1948
1949
1950
Cash on
Hand
$ 893.95
Bank
Account -
National
Bank of
Commerce
of Norfolk,
Virginia
Beach,
Virginia
$193.25
$ 460.25
$ 457.25
$ 85.50
$82.50
$ 81.50
81.50
U.S.
Savings
Bonds-Cost
750.00
1,125.00
1,125.00
1,125.00
1,125.00
1,125.00
1,125.00
1,125.00
Lot-Indian
River Road
250.00
Lots 14-15,
Holland
Terrace
4,000.00
4,000.00
4,000.00
4,000.00
4,000.00
4,000.00
Lot 13,
Holland
Terrace
300.00
300.00
300.00
300.00
Fixtures
500.00
1,650.00
1,650.00
1,750.00
1950 Buick
2,999.08
Tractor &
Cultivator
2,027.50
Mower
265.00
*305 In addition to the foregoing assets, petitioner had cash on hand on December 31, 1944, in the amount of $7,500. The petitioner signed and filed special tax returns on coin-operated gaming devices to be operated at his Landtown Inn as follows: Period, 6-1-46 to 6-30-46, 7-1-46 to 6-30-47, 10-1-49 to 6-30-50, 7-1-50 to 6-30-51 Illegal whiskey was found on the petitioners' premises on one occasion during the period from 1945 to 1950. The petitioners had the following liabilities on December 31, 1950: Loan from National Bank of Com-
merce of Norfolk on 1950 Buick
$1,165.78
Note payable to Curling Farm Sup-
ply
500.00
The petitioners are entitled to depreciation deductions as follows, in lieu of the amounts deducted on their returns: For the year ended 12-31-47
$ 25.00
For the year ended 12-31-48
132.50
For the year ended 12-31-49
302.50
For the year ended 12-31-50
585.51
The petitioners' living expenses were $950 per year for each of the taxable years 1945 to 1949, inclusive, and $1,350 for 1950. No part of any of the deficiencies was due to fraud with intent to evade tax. Petitioners' failure to file timely income tax returns *306 for 1948 and 1950 was not due to reasonable cause. Petitioners failed to file declarations of estimated tax for the years in issue. Those failures were not due to reasonable cause but were due to willful neglect. Opinion The respondent determined deficiencies in the petitioners' income taxes for the years 1945 through 1950, inclusive, by use of the increases in the petitioners' net worth. When respondent's agents asked the petitioners for their records in support of their reported income, the only book presented to them was a composition book, containing three pages of unidentifiable figures. The figures had no captions, dates or description whatsoever. At the hearing the petitioners contended they had kept a record showing everything bought and sold by them during the taxable years. They did not produce this book. Because of the inadequacy of petitioners' books and records exhibited to respondent and the failure of petitioners to disclose business records which they claim were adequate, the respondent was justified in using the net worth method of computing their income. Henry B. Mikelberg, 23 T.C. , No. 41 (November 23, 1954). Understatements of income were disclosed *307 by this process. Petitioners contend that the respondent's net worth computation is incorrect because he failed to credit them with $7,500 cash on hand on January 1, 1945, and because he overstated the amount of their nondeductible living expenses. The evidence offered at the hearing by petitioners is their own testimony to the effect that they had saved enough of their earnings to have accumulated $7,500 in cash and war bonds by December 31, 1944. It is apparent that neither petitioner, during their youth, experienced any appreciable interruption in their working and earning years because of schooling. The extent of the schooling of either was to the fifth grade. Mary worked at various domestic jobs beginning in her early teens and saved her earnings. She apparently also early in her earning life discovered that Earl was a steady worker and consistent saver of his earnings. She and Earl began to pool their savings (Mary was the custodian of the "pool") approximately in 1933 when they were 17 and 18 years of age. They continued to save their earnings consistently at least to and including December 31, 1944. These facts are uncontroverted by the record. As noted, Mary worked as *308 a farm hand and as a domestic during the years prior to 1945, but her wages cannot be determined from the record. Earl also, during those years, worked as a farm hand, a caddie, a hunter and seller of lost golf balls, and in some capacity as a hotel employee, but his earnings cannot be even approximated. We think it fair to conclude that the highest wages either earned at such labor was $2 per day with the exception of the earnings of Earl through sale of golf balls. The record affords no basis for a finding as to what proportion of the pre-1945 years petitioners were employed at those wages, nor is there any showing with respect to their individual cost of living during that period. Assuming, however, a minimum of nonproductive work days and a cost of living consistent with petitioners' station in life and rural living standards, it is not beyond belief that they could have amassed savings of $7,500 prior to January 1, 1945. Such an accomplishment may have been possible by the savings of nearly all of petitioners' earnings and nothing appears of record which would warrant a contrary conclusion. Although it is clear from the record and the demeanor of petitioners at the hearing that *309 their education is a virtual nullity and that their degree of intelligence lower than average, we were nevertheless impressed with their sincerity and the truthfulness of their testimony, limited as it was by their lack of understanding of the Internal Revenue Code and their ignorance of more than rudimentary English terms. We have therefore found as a fact that petitioners' cash on hand on December 31, 1944, was $7,500. Petitioners contend the respondent's findings of their cost of living during the tax years at issue is greatly overstated. Respondent fixes such expense at $2,525 per year for each year. Petitioners maintain their living expense was at no time during those years greater than $780 annually. We think the record more nearly supports petitioners' figure. They lived in one room in the rear of the restaurant and confectionary operated by them. The rental for the entire premises was $40 per month. Although no camparison of the living space as opposed to business area is shown, we are satisfied the living quarters occupied not more than half of the entire building. The living quarters contained no electrical facilities with the exeception of one outlet used for a single *310 electric bulb. Cooking facilities consisted of the gas range used for preparing restaurant meals. Clothing cost petitioners about $170 per year. Neither petitioner had a hobby or engaged in recreational activities of any kind. Their food was largely produce from their farm the value of which is undisclosed. They purchased a new Buick automobile in 1950, which, owing to its newness, could have cost them little for repairs. The car expense attributable to living cost was limited to gasoline and oil necessary for nonbusiness operation which was 12,000 miles a year. It is significant, but by no means conclusive, that petitioners during investigation by respondent's agents acquiesced in an estimated cost of living equal to that with which they are charged in respondent's net worth computation of their taxable income. We are satisfied that petitioners had little, if any, knowledge as to what portion of their annual expense constituted nondeductible living cost as opposed to business expense. Such being the case, their acquiescence to the agents' cost of living estimate bears little weight. From the record as a whole, we have found as a fact that petitioners' nondeductible living costs *311 amounted to $950 per year from 1945 to 1949, inclusive. As noted, in 1950 the petitioners purchased new a Buick automobile. After making a $1,000.60 down payment thereon the remainder of the purchase price was financed. This required a monthly payment of $83.27 in addition to other living expenses. The car was operated for nonbusiness purposes approximately 12,000 miles during that year. The cost of its operation is not shown by the record but it is reasonable to conclude that such cost was also an addition to petitioners' other living expense. From a consideration of all factors, we have found as a fact that petitioners' nondeductible living expense for 1950 was $1,350 per year. The second issue is whether the petitioners were liable for additions to tax for fraud for the years 1945 through 1950, inclusive, under section 293(b) of the 1939 Code. The respondent has the burden of proving fraud. The evidence must be clear and convincing. M. Rea Gano, 19 B.T.A. 518. The respondent contends that petitioners are liable for fraud penalties since their returns did not disclose income from coin-operated gaming devices which were in the restaurant, from the illegal sale of whiskey, *312 and from a farm operated by Earl. It is true that there is some evidence to the effect that Earl had at an undisclosed time been convicted of having had whiskey in his possession under circumstances which apparently constituted such possession a violation of state law. Earl testified, however, that he had never sold whiskey during the years here in issue and his testimony is uncontroverted. There having been no such sales, no income to petitioners can be attributed to that source. Although it is not disputed that petitioners had in their place of business so-called pinball machines which under Virginia statutes constituted and were taxed and licensed as "coin-operated gaming devices," it is clear from the uncontradicted testimony of petitioners that gambling by the use of such devices was not permitted by petitioners and that they derived no income therefrom. We are satisfied from the record as a whole that, although petitioners have understated their income for the years involved, they did so because of their ignorance of the 1939 Code rather than an intent to defraud the Government. While it is true that ignorance of the law does not excuse its violation generally, it is likewise *313 true that ignorance of the law may preclude the formulation of fraudulent intent. E. S. Iley, 19 T.C. 631. On the fraud issue, we find for petitioners. Petitioners have failed to offer any reason why the addition to tax under section 291(a) of the 1939 Code should not be assessed for the years 1948 and 1950. For the years 1945, 1946, 1947 and 1949 the petitioners filed their income tax returns within the time prescribed by law. We conclude from this that they were aware that they were required by law to report their annual income and knew when the report was to be filed even though they might not know what their correct income was. The burden of proof is on the petitioners to show that the failure to file the returns within the time prescribed by law, or prescribed by the Commissioner in pursuance of law, was due to reasonable cause and not due to willful neglect. Charles C. Rice, 14 T.C. 503, 509. In view of the petitioners' failure of proof, the respondent's determination is upheld. The final issue is whether petitioners were liable for additions to tax for failure to file declarations of estimated tax for the years 1945 through 1950, inclusive. Petitioners *314 have introduced no evidence and present no argument to show reasonable cause for failure to file declarations for 1945 through 1950 and are therefore liable for the section 294(d)(1)(A) penalty. Decisions will be entered under Rule 50.